**GOLAK, Plaintiff-Appellant, v. KASSOUF, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22873.   Decided April 21, 1954.

Siegel & Siegel, Cleveland, for plaintiff-appellant.
Klein & Klein, Cleveland, for defendant-appellee.

184

## OPINION

By SKEEL, J:

This appeal comes to this court on questions of law and fact from the Common Pleas Court of Cuyahoga county. The action is one seeking to cancel a contract between the parties on the ground of fraud. The parties to this action entered into a contract on July 28, 1952, whereby plaintiff purchased from defendant a grocery business located at 7915 Detroit Avenue. It is claimed by the plaintiff that the defendant knowingly and fraudulently represented the weekly income of the business to be between $750.00 and $800.00 per week, not including credit sales, and $900.00 to $950.00 including such sales, when, in fact, the sales did not exceed $400.00 to $450.00 per week, whereby plaintiff was induced to purchase said business by reason of such fraudulent representations.

The questions presented here are purely questions of fact, and whether the required degree of proof has been met by the plaintiff's evidence.

The plaintiff's contention is that the defendant made the positive representation as to income, that is, that the "cash sales amounted to between $750.00 and $800.00 per week (not including credit sales)" and that such representations to defendant's knowledge were false and constituted in fact the inducing cause of the sale. As proof that such representations were untrue, the plaintiff and her witnesses testified that from the moment she took possession of the store the sales averaged about $445.00 per week. She also depends on the defendant's record of daily receipts in support of the claimed misrepresentations.

The defendant denies making such representations and also claims that before the plaintiff bought the business she was shown the defendant's day-by-day record of cash sales and the cost or money expended in conducting the business.

It is evident, therefore, that the claims of one side are the absolute negation of the claims of the other side, so that if the court comes to the conclusion that the evidence is of greater credence on the side of the plaintiff than that of the defendant, and that the evidence of the defendant is without credence or support, then there can be no doubt but that the court should hold that the plaintiff has made out her case by clear and convincing evidence. ·

The plaintiff testified that she saw the defendant's ad seeking to sell his business, in the newspaper. She called the telephone number as published, a lady answered, and upon inquiring the price, was told that the selling price was

$5000.00. The evidence also shows that when the plaintiff upon going to the store asked the price, the defendant said $5500.00, and when told what his wife had said, he at once agreed that if that was what she said, then the plaintiff could have the store for $5000.00. He finally sold the store to plaintiff for $4800.00.

Defendant's wife, as a witness; testified that she did not know what the selling price was, had never discussed it with her husband although the only telephone was in the living quarters on the second floor and she acknowledged that she expected to answer inquiries of those responding by telephone to the advertisement, and that she did not know what the store income was, although she worked in the store at times. These statements of the witness, in logic and common sense are so unbelievable as to completely destroy her credibility and throw much doubt on the side that called her.

The defendant's witnesses, Nick Sanfillippo (delivery boy and helper in the store) and Keating (the landlord) both testified that they saw the plaintiff's husband look at the defendant's book showing income of the store and they both testified that after the plaintiff took over the store business dropped off. Yet, an examination of defendant's Exhibit 1, which is his record of income, shows that for the week of June 9th there were $680.00 cash sales, the week of June 16th, $627.00 cash sales, and for the week of June 23, $643.49. The first week in July the cash income was $492.00; the second week $455.00, and the last week the defendant was in charge, $537.00. The plaintiff's books show that for the five weeks she was in charge the sales were $497.00, $486.00, $422.00, $417.00 and $459.00. Certainly the difference is not enough for anyone to note the loss in the number of customers over a weekly period. These witnesses cannot strengthen the defendant's defense and it should be noted particularly that the witness, Keating, is now plaintiff in an action for damages against this plaintiff.

The defendant denies categorically ever having made any representation as to the income of the store and testified that the average gross income, while he owned the store, was $485.00 per week. The defendant's book, where he kept the cash income and expenses, shows that for the two-year period before the sale to the plaintiff, there were a number of months when losses were experienced and the profits shown on most of the other months were, to say the least, meager. The defendant testified that the income from credit sales was about $100.00 per month which income did not show in the book. But even with such added income, the business, as shown by

defendant's records, was not a profitable venture, and his daily income never reached the figure of $800.00 per week. The defendant says also that he took back the business from the plaintiff after the plaintiff had operated it for six weeks and it had been closed about eight or nine days after plaintiff left and after operating the business for a short time, sold it to his landlord, the witness Keating, for $1500.00 plus the $500.00 deposit for rent. It is incredible to believe that the plaintiff did not inquire about the income as he says he did before making the purchase, or that the value of the store decreased from $4800.00 to $1500.00 in six weeks.

The defendant, to negative the materiality of claimed misrepresentations, calls attention to the fact that the plaintiff was in possession of the business for four days before the contract was signed, thereby having first-hand knowledge of the income, and thereafter went into possession and conducted the business after the contract was signed, while the deal was in escrow waiting for the D-2 liquor permit to go through and that they employed plaintiff's lawyer to handle the transaction, all such facts tending to show a complete and honest disclosure. These facts, of course, do mitigate in defendant's favor. But when considering all of the evidence, including defendant's records which disclose his acknowledged income far below his representations, this court comes to the conclusion that plaintiff has established, by clear and convincing evidence, the fact that the defendant was guilty of misrepresenting a material element in inducing the sale; that the plaintiff acted upon such misrepresentations in agreeing to buy the store, and when it was discovered that the defendant's representations were untrue as to income, the store was tendered back in as good or better condition as to stock than it was when delivered to the plaintiff (not considering the nine days it was closed which would of necessity destroy the fresh vegetables) and that the plaintiff, upon the evidence is entitled to a decree as prayed for and the return of the money in escrow.

Decree for plaintiff is so ordered. Exceptions. Order see journal.

HURD, PJ, KOVACHY, J, concur.